**In re Linda R. GRITTNER, Debtor.**

No. 14–10529.

United States Bankruptcy Court,
D. Vermont.

Signed Nov. 4, 2014.

Carolyn L. Adams, South Ryegate, VT, for Debtor.

### ORDER

***DENYING DEBTOR'S APPLICATION FOR WAIVER OF THE CHAPTER 7 FILING FEE AND GRANTING DEBTOR'S MOTION TO DEFER DUE DATE AND LIMIT THE NUMBER OF INSTALLMENTS***

COLLEEN A. BROWN, Bankruptcy Judge.

On September 26, 2014, Linda R. Grittner (the "Debtor") filed a voluntary Chapter 7 petition (doc. # 1) and an application for waiver of the Chapter 7 filing fee (doc. # 2) (the "Application"). On October 2, 2014, the Court entered an Order denying the Debtor's Application and directing the Debtor to pay the filing fee in four installments, with the first installment due on October 17, 2014, and the last installment due on December 31, 2014 (doc. # 8).

On October 8, 2014, the Debtor filed a motion for reconsideration of the October 2, 2014 Order (doc. # 10). As grounds for reconsideration, the Debtor alleged her dire financial situation, coupled with the

substantial expense and difficulty of caring for her disabled child, made it impossible for her to make the required payments on her home and vehicle loans and pay the filing fee, even in installments. The Debtor also provided new information concerning the sources of her income, including a "flexible family spending account" disbursement in the amount of $82 per month, which she classified as "other governmental assistance."

On October 15, 2014, the Court entered an Order granting the Debtor's motion for reconsideration, subject to the Debtor filing a supplement to her Application. In its Order, the Court articulated the two-pronged test the Court must apply to determine whether a debtor is eligible for a waiver of the Chapter 7 filing fee. *See* 28 U.S.C. § 1930(f)(1).[i] In order to obtain a waiver of the Chapter 7 filing fee the Debtor must establish both prongs of the test. *In re Benway*, 2011 WL 1522332, *3, 2011 Bankr.LEXIS 1556, *8 (Bankr. D.Vt., Apr. 19, 2011). In that Order, the Court made a findings that (1) the Debtor had established it would be a hardship for her to pay the filing fee, even in installments, and thus the Debtor had satisfied the second prong of the § 1930(f) test, but (2) the Debtor had not established her income was below 150% of the poverty line, thus failing to satisfy the first prong

of the § 1930(f) test. However, based on the possibility that the Court had erroneously included, in the income prong of the test, the $82 per month of income designated as a "flexible family spending account," and in light of the Court's lack of familiarity with this type of benefit, the Court granted the motion for reconsideration, subject to the Debtor timely supplementing the record to show why she believed her income was below 150% of the official income poverty line. The Court made clear that if the Debtor could establish her income was below the statutory income threshold, the Court would grant the Debtor's Application, and if the Debtor failed to do so, the Court would deny her Application.

On October 29, 2014, the Debtor timely filed supplements to the record (doc. ## 13–15). In her supplements, the Debtor advances two arguments to establish her income is below the 150% threshold. First, the Debtor argues her receipt of food stamps automatically establishes her eligibility for a waiver, because the maximum gross income threshold for USDA food stamp eligibility is 130%) of the poverty line. *See Supplemental Nutrition Assistance Program Eligibility*, U.S. DEP'T AGRIC. (Oct. 3, 2014), http://www.fns.usda.gov/snap/eligibility#Income

---

i. (f)(1) Under the procedures prescribed by the Judicial Conference of the United States, the district court or the bankruptcy court may waive the filing fee in a case under chapter 7 of title 11 for an individual if the court determines that such individual has income less than 150 percent of the income official poverty line (as defined by the Office of Management and Budget, and revised annually in accordance with section 673(2) of the Omnibus Budget Reconciliation Act of 1981) applicable to a family of the size involved and is unable to pay that fee in installments. For purposes of this paragraph, the term "filing fee" means the filing fee required by subsection (a), or any

other fee prescribed by the Judicial Conference under subsections (b) and (c) that is payable to the clerk upon the commencement of a case under chapter 7.

(2) The district court or the bankruptcy court may waive for such debtors other fees prescribed under subsections (b) and (c).

(3) This subsection does not restrict the district court or the bankruptcy court from waiving, in accordance with Judicial Conference policy, fees prescribed under this section for other debtors and creditors.

28 U.S.C. 1930(f).

[attached]. In other words, the Debtor asserts that since the USDA has found her eligible to receive food stamps, it must be true that her income is below 130% of the income official poverty line, and therefore she must qualify for a fee waiver, which only requires her income to be below 150% of the income official poverty line.

However, the Debtor's premise that all individuals receiving food stamps have gross income below 130% of the official income poverty line is flawed. In certain instances, an individual may qualify for food stamps notwithstanding the fact that gross income exceeds the 130% threshold, *e.g.*, where a household includes a person receiving certain types of disability payments. *See id.* Food stamp applicants may also, in some instances, deduct certain types of income, such as income from child support payments, which may be included in a debtor's income for purposes of their eligibility for a waiver of the Chapter 7 filing fee. *See In re Donahue,* 410 B.R. 751, 755 (Bankr.N.D.Ga.2009) (holding support payments received into a household are considered income for that household for purposes of the fee waiver analysis). After considering the new evidence and arguments the Debtor presents on this point, the Court finds the Debtor has failed to establish that her eligibility to receive USDA food stamps automatically qualifies her for a fee waiver under § 1930(f).

■ Second, the Debtor argues that the $82 per month of income the Debtor receives in the form of what the Debtor now identifies as "flexible family funding" should be characterized as non-cash governmental assistance, and thus excluded from income for purposes of the § 1930(f) analysis. As set out in the Court's October 15, 2014 Order, for purposes of establishing the Debtor's eligibility for a waiver of the Chapter 7 filing fee, the Court sub-

tracts all amounts attributable to non-cash governmental assistance, such as food stamps. *See In re Benway,* 2011 WL 1522332 at *3, 2011 Bankr.LEXIS 1556 at *8. Thus, the Court has subtracted $58 per month from the Debtor's income, allocable to non-cash governmental assistance, to arrive at the Debtor's monthly income of $2,011.13. The Debtor asserts that the amount of income attributable to the "flexible family funding" is analogous to food stamps, *i.e.,* non-cash governmental assistance. In support of this proposition, the Debtor directs the Court to the Flexible Family Funding Program Guidelines. However, those guidelines state *"funds are used at the discretion of the family,"* and "[t]hese *funds* can be used for any legal good or activity that the family and individual choose." *Flexible Family Funding Program Guidelines,* VT. DEP'T OF DISABILITIES AGING AND INDEPENDENT LIVING (July 1, 2009) (emphasis added), *available at* http://ddas.vermont.gov/ddas-programs/programs-flexible-family-funding-default-page [attached]. The Flexible Family Funding Program Guidelines demonstrate this benefit is cash governmental assistance. As cash governmental assistance, that amount is not excluded from the Debtor's income for purposes of determining whether she is eligible for a Chapter 7 fee waiver. In sum, the Debtor has failed to present persuasive evidence showing "flexible family funding" income should be characterized as non-cash governmental assistance, and thus excluded from income for purposes of the § 1930(f) analysis.

■ In sum, neither of the arguments the Debtor proffers in her supplement establish that her income is less than 150% of the official income poverty line ($1,967 per month). Pursuant to its previous Order, see doc. # 12, since the Debtor has not established otherwise, the Debtor's

monthly income for purposes of her Application is $2,011.13. That amount exceeds the statutory threshold of 150% of the income official poverty line of $1,967 per month by $44.13. Therefore, the Court has no discretion to grant her a fee waiver.

In her supplement, the Debtor requests that if the Court does not grant a waiver that it extend the time she has to pay the filing fee to March 25, 2014, and be permitted to pay the full amount all at once. The pertinent rule governing the timing of filing fee installment payments provides that the Court may "grant leave to pay [the filing fee] in installments and fix the number, amount and dates of payment." Federal Rule of Bankruptcy Procedure 1006(b)(2). This rule places only two limitations on the Court's ability to fix the number, amount, and dates of payment of installments: First, the number of installments may not exceed four. Second, the final installment must be payable no later than 120 days after the filing of the petition, except that if a party demonstrates cause to extend the time for payment, the due date of the final installment may be extended out to a date that is 180 days after the filing of the petition.

In its October 15, 2014 Order, this Court found the Debtor demonstrated good cause to extend the time for her to make the installment payments from 120 to 180 days, *i.e.*, to March 25, 2015, without making any determination as to the number and amount of those installments, pending review of the Debtor's supplement to her Application.

The Court next turns to the Debtor's request to pay the filing fee in a single installment. Although the Court is reticent to permit a debtor to enjoy the benefits of the bankruptcy stay for five months without paying any portion of the filing fee, under the specific facts and exigent circumstances of this case, particularly the small amount by which the Debtor's monthly income exceeds the official income poverty line ($44.13), the Court finds cause to grant the Debtor's request that she be permitted to pay the filing fee in a single installment. The Court finds nothing in the statute to prohibit that, and particularly decides that the statute's reference to the court's ability to fix the number of installments—in the plural—does not preclude the Court from setting the number of installments at one. *See, e.g., In re Foley*, No. 92–02967, 1993 WL 13673881 (Bankr.S.D.Iowa, Feb. 17, 1993) (*sua sponte* extending time to pay filing fee in one payment).

Accordingly, IT IS HEREBY ORDERED that

(i) the Debtor's application for waiver of the Chapter 7 filing fee is DENIED;

(ii) the Debtor's motion for an extension of the time, until *March 25, 2015*, to pay the filing fee is GRANTED;

(iii) the Debtor's request that she be permitted to pay her filing fee in one installment of $335 is GRANTED; and

(iv) the discharge shall not be entered in this case until after the full filing fee is paid.

USDA United States Department of Agriculture
Food and Nutrition Service

## Supplemental Nutrition Assistance Program (SNAP)

Home » How To Apply » Applicants and Recipients

### Eligibility

To see if you might be eligible for Supplemental Nutrition Assistance Program (SNAP) benefits, visit our pre-screening tool.

For households in the 48 Contiguous States and the District of Columbia October 1, 2014 through September 30, 2015. To get SNAP benefits, households must meet certain tests, including resource and income tests:

- Resources
- Income
- Deductions
- Employment Requirements
- Special Rules for Elderly or Disabled
- Immigrant Eligibility

### Resources

Households may have $2,250 in countable resources, such as a bank account, or $3,250 in countable resources if at least one person is age 60 or older, or is disabled. However, certain resources are NOT counted, such as a home and lot, the resources of people who receive Supplemental Security Income (SSI), the resources of people who receive Temporary Assistance for Needy Families (TANF, formerly AFDC), and most retirement (pension) plans. The procedures for handling vehicles are determined at the state level. States have the option of substituting the vehicle rules used in their TANF assistance programs for SNAP vehicle rules when it results in a lower attribution of household assets. A number of States exclude the entire value of the household's primary vehicle as an asset. In States that count the value of vehicles, the fair market value of each licensed vehicle that is not excluded is evaluated. Currently 39 States exclude the value of all vehicles entirely. 11 States totally exclude the value of at least one vehicle per household. The 3 remaining states exempt an amount higher than the SNAP'S standard auto exemption (currently set at $4,650) from the fair market value to determine the countable resource value of a vehicle. For more information concerning State specific vehicle policy, check with the State agency that administers the SNAP program.

### Income

Households have to meet income tests unless all members are receiving TANF, SSI, or in some places general assistance. Most households must meet both the gross and net income tests, but a household with an elderly person or a person who is receiving certain types of disability payments only has to meet the net income test. Households, except those noted, that have income over the amounts listed below cannot get SNAP benefits.

| Household Size | Gross monthly income (130 percent of poverty) | Net monthly income (100 percent of poverty) |
|---|---|---|
| 1 | $1,265 | $973 |
| 2 | 1,705 | 1,311 |
| 3 | 2,144 | 1,650 |
| 4 | 2,584 | 1,988 |
| 5 | 3,024 | 2,326 |
| 6 | 3,464 | 2,665 |
| 7 | 3,904 | 3,003 |
| 8 | 4,344 | 3,341 |
| Each additional member | +440 | +339 |

Gross income means a household's total, non excluded income, before any deductions have been made. Net income means gross income minus allowable deductions.

\* SNAP gross and net income limits are higher in Alaska and Hawaii.

**Deductions are allowed as follows:**

- A 20 percent deduction from earned income;
- A standard deduction of $155 for households sizes of 1 to 3 people and $165 for a household size of 4 (higher for some larger households);
- A dependent care deduction when needed for work, training, or education;
- Medical expenses for elderly or disabled members that are more than $35 for the month if they are not paid by insurance or someone else;

- Legally owed child support payments;
- Some States allow homeless households a set amount ($143) for shelter costs; and
- Excess shelter costs that are more than half of the household's income after the other deductions. Allowable costs include the cost of fuel to heat and cook with, electricity, water, the basic fee for one telephone, rent or mortgage payments and taxes on the home. (Some States allow a set amount for utility costs instead of actual costs.) The amount of the shelter deduction cannot be more than $490 unless one person in the household is elderly or disabled. (The limit is higher in Alaska, Hawaii and Guam.)

| Gross Income Computation | Example |
| --- | --- |
| Determine household size. . . . . | 4 people with no elderly or disabled members. |
| Add gross monthly income. . . | $1,500 earned income + $550 social security=$2,050 gross income. |
| If gross monthly income is less than the limit for household size, determine net income. | $2,050 is less than the $2,584 allowed for a 4–person household, so determine net income. |

| Subtract Deductions to Determine Net Income and Apply the Net Income Test | Example |
| --- | --- |
| Subtract 20% earned income deduction. . . . . . . . . | $2,050 gross income $1,500 earned income × 20% = $300. $2,050–$300=$1,750 |
| Subtract standard deduction. . . . . . . . . | $1,750–$165 standard deduction for a household size of 4=$1,585 |
| Subtract dependent care deduction. . . . . . . . . . | $1,585–$361 dependent care =$1,224 |
| Subtract child support deduction. . . . . . . . . | 0 |
| Subtract medical costs over $35 elderly and disabled. . . . . . . . . | 0 |
| Excess shelter deduction. . . . . . . . . | |
| Determine half of adjusted income. . . . . . . . . | $1,224 adjusted income/2=$612 |
| Determine if shelter costs are more than half of adjusted income. . . . . . . . . | $700 total shelter-$612 (half of income)=$88 excess shelter cost |

| | |
|---|---|
| Subtract excess amount, but not more than the limit, from adjusted income. . . . . . . . . . | $1,224–$88=$1,136 Net monthly income |
| Apply the net income test. . . . . . . . . | Since the net monthly income is less than $1,988 allowed for a household of 4, the household has met the income test. |

### Benefits

**How Much Could I Receive? Allotments for households in the 48 contiguous states and the District of Columbia.**

The amount of benefits the household gets is called an allotment. The net monthly income of the household is multiplied by .3, and the result is subtracted from the maximum allotment for the household size to find the household's allotment. This is because SNAP households are expected to spend about 30 percent of their resources on food.

(October 1, 2014 through September 30, 2015)

| People in Household | Maximum Monthly Allotment |
|---|---|
| 1 | $194 |
| 2 | $357 |
| 3 | 511 |
| 4 | $649 |
| 5 | $771 |
| 6 | $925 |
| 7 | $1,022 |
| 8 | $1,169 |
| Each additional person | $146 |

| Benefit Computation | Example |
|---|---|
| Multiply net income by 30%. . . (Round up) Subtract 30% of net income from the maximum allotment for the household size . . . | $1,136 net monthly income × .3=340.8 (round up to $341) $649 maximum allotment for 4–$341 (30% of net income)=$308, **SNAP Allotment** for a full month |

If a household applies after the first day of the month, benefits will be provided from the day the household applies.

SNAP benefits are available to all eligible households regardless of race, sex, religious creed, national origin, or political beliefs

### Employment Requirements

Generally ABAWDS between 18 and 50 who do not have any dependent children can get SNAP benefits only for 3 months in a 36–month period if they do not work or participate in a workfare or employment and training program other than job search. This requirement is waived in some locations.

With some exceptions, able-bodied adults between 16 and 60 must register for work, accept suitable employment, and take part in an employment and training program to which they are referred by the local office. Failure to comply with these requirements can result in disqualification from the Program.

**Special Rules for the Elderly or Disabled**

Most SNAP rules apply to all households, but there are a few special rules for households that contain an elderly or disabled member.

**Who is Elderly?**

A person is elderly if he or she is 60 years of age or older.

**Who is Disabled?**

Generally, a person is considered to be disabled for SNAP purposes if he or she:

- Receives Federal disability or blindness payments under the Social Security Act, including Supplemental Security Income (SSI) or Social Security disability or blindness payments; or
- Receives State disability or blindness payments based on SSI rules; or
- Receives a disability retirement benefit from a governmental agency because of a disability considered permanent under the Social Security Act; or
- Receives an annuity under the Railroad Retirement Act and is eligible for Medicare or is considered to be disabled based on the SSI rules; or
- Is a veteran who is totally disabled, permanently housebound, or in need of regular aid and attendance; or
- Is a surviving spouse or child of a veteran who is receiving VA benefits and is considered to be permanently disabled.

**How do I Get SNAP benefits?**

A member of your household can apply for SNAP benefits at the local State or county office or by visiting the State agency's website and completing an online application. The State agency information should be listed in the government section of the local telephone book. This is generally the quickest way to find the local office. If that doesn't work, try calling the SNAP Hotline for your State. Most of them are toll free numbers.

If you are unable to go to the local office or do not have access to an internet-ready computer, you may have another person, called an authorized representative, apply and be interviewed on your behalf. You must designate the authorized representative in writing.

Normally a household must file an application form, have a face-to-face interview, and provide proof (verification) of certain information, such as income and expenses. The office interview may be waived if the household is unable to appoint an authorized representative and no household member is able to go to the office because of age or disability. If the office interview is waived, the local office will interview you by telephone or do a home visit. A home visit must be scheduled beforehand with the household.

**What is a Household?**

Everyone who lives together and purchases and prepares meals together is grouped together as one household. However, if a person is 60 years of age or older and he or she is unable to purchase and prepare meals separately because of a permanent disability, the person and the person's spouse may be a separate household if the others they live with do not have very much income. (More than 165 percent of the poverty level.)

Some people who live together, such as husbands and wives and most children under age 22, are included in the same

household, even if they purchase and prepare meals separately.

Normally people are not eligible for SNAP benefits if an institution gives them their meals. However, there is one exception for elderly persons and one for disabled persons:

- Residents of federally subsidized housing for the elderly may be eligible for SNAP benefits, even though they receive their meals at the facility.
- Disabled persons who live in certain nonprofit group living arrangements (small group homes with no more than 16 residents) may be eligible for SNAP benefits, even though the group home prepares their meals for them.

## What Resources Can I Have (and Still Get SNAP Benefits)?

Households may have $2,250 in countable resources, such as a bank account, or $3,250 in countable resources if at least one person is age 60 or older, or is disabled. However, certain resources are NOT counted, such as a home and lot, most retirement (pension) plans, the resources of people who receive Supplemental Security Income (SSI), the resources of people who receive Temporary Assistance to Needy Families (TANF) (formerly AFDC), and, up to $4,650 of the fair market value of one car per adult household member (and one car per teen-aged household member if the teenager is using it to go to work, look for work, or prepare for work). If a vehicle is needed to transport a physically disabled household member, its value is not counted. The resources of people who get SSI and Temporary Assistance for Needy Families (TANF) are not counted at all. *An important exception*

*to this is that in the State of California SSI recipients are not eligible for SNAP benefits, because they receive a State supplement to their SSI benefits in lieu of SNAP benefits.*

## What Are the Income Limits?

Most households have to meet both a monthly gross income test and a monthly net income test to be eligible for SNAP benefits. However, households in which all members are receiving SSI or TANF are considered to be eligible based on income. Other households with one or more elderly or disabled members only have to meet the net income test. Net income is gross income minus certain deductions.

## What Deductions Are Allowed?

The allowable deductions are: a standard deduction for all households; a 20% earned income deduction; a deduction for dependent care costs when necessary for work, training, or education; a deduction for legally owed child support payments; a deduction for medical costs for elderly and disabled people; and an excess shelter cost deduction.

- **Medical deduction.** For elderly members and disabled members, allowable medical costs that are more than $35 a month may be deducted unless an insurance company or someone who is not a household member pays for them. Only the amount over $35 each month may be deducted. Allowable costs include most medical and dental expenses, such as doctor bills, prescription drugs and other over-the-counter medication when approved by a doctor, dentures, inpatient and outpatient hospital expenses, and nursing care. They also include other medi-

cally related expenses, such as certain transportation costs, attendant care, and health insurance premiums. The costs of special diets are not allowable medical costs. Proof of medical expenses and insurance payment is required before a deduction for these expenses may be allowed.

- **Shelter deduction.** The shelter deduction is for shelter costs that are more than half of the household's income after other deductions. Allowable shelter costs include the costs of rent or mortgage, taxes, interest, and utilities such as gas, electricity, and water. For most households, there is a limit on the amount of the deduction that can be allowed, but for a household with an elderly or disabled member all shelter costs over half of the household's income may be deducted.

### Receiving SNAP benefits

States issue SNAP benefits through local State or county offices to households that are eligible to receive them. Clients who are eligible for SNAP benefits receive benefits through an Electronic Benefit Transfer (EBT) card. Benefits are automatically loaded into the household's account each month. The local office gives the eligible household the SNAP EBT card so the household can buy groceries at authorized food stores. The card works like a bank debit card. The cost of the eligible food items is deducted from the household's account automatically. Benefits are automatically loaded into the household's account each month on the designated date as provided in the SNAP benefit issuance schedule at http://www.fns.usda.gov/snap/snap-monthly-benefit-issuance-schedule.

### Nondiscrimination

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, or marital and family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).

To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 14th and Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice and TDD). USDA is an equal opportunity provider and employer.

### Further Information

Contact your local office for further information or to file an application for SNAP benefits. For more information on the treatment of income, and a sample calculation of eligibility and benefits, see Eligibility and Benefits.

### Immigrant Eligibility Requirements

The 2002 Farm Bill restores SNAP eligibility to most legal immigrants that:

- Have lived in the country for 5 years; or
- Are receiving disability-related assistance or benefits; or
- Children under 18

Certain non-citizens such as those admitted for humanitarian reasons and those admitted for permanent residence may also eligible for the program. Eligible household members can get SNAP bene-

fits even if there are other members of the household that are not eligible. (See Policy on Immigrants for information on qualified categories and eligibility of also SNAP Guidance on Non–Citizen Eligibility).

Non-citizens that are in the U.S. temporarily, such as students, are not eligible.

*Last Modified: 10/03/2014*

STATE OF VERMONT

DEPARTMENT OF DISABILITIES, AGING AND INDEPENDENT LIVING

DIVISION OF DISABILITY AND AGING SERVICES

**FLEXIBLE FAMILY FUNDING**

**PROGRAM GUIDELINES**

**Revision Date: July 1, 2009**

For additional information, or to obtain copies of this report in this or other formats, contact:

**The Division of Disability and Aging Services Department of Disabilities, Aging and Independent Living**

103 South Main Street

Waterbury, VT 05671–1601

**Phone: 802–241–2648**

Fax: 802–241–4224

http://www.dail.vermont.gov

## TABLE OF CONTENTS

|  | *Page* |
|---|---|
| Introduction | *451* |
| Purpose | *451* |
| Eligibility | *451* |
| Record Keeping | *452* |
| Agency Reporting | *453* |
| Agency Allocation | *454* |

Attachment A: Flexible Family Funding Data Sheet

Attachment B: Flexible Family Funding Sliding Scale

STATE OF VERMONT

DIVISION OF DISABILITY AND AGING SERVICES

## FLEXIBLE FAMILY FUNDING PROGRAM GUIDELINES

### INTRODUCTION

The Flexible Family Funding Program (FFF) reflects an acknowledgement that families, as caregivers, offer the most natural and nurturing home for children and many adults with disabilities. Care and support provided by families are of benefit to the individual, as well as to the service system. By avoiding the need for more intensive and costly out-of-home services, Flexible Family Funding has assisted families to continue to support people with developmental disabilities at home.

### PURPOSE

The purpose of the Flexible Family Funding Program is to offer support to individuals with developmental disabilities and their families to enhance their ability to live together. These funds are used at the discretion of the family for services and supports that benefit the individual and family. For adults, it is important that the individual have a voice in the use of the FFF allocation. Examples of acceptable uses of FFF include family respite, assistive technology, individual and household needs (e.g., clothing, heating oil, rent, etc.), and recreational services. These funds can be used for any legal good or activity that the family and individual choose.

### ELIGIBILITY

*Developmental Disabilities Services Eligibility Determination:*

The designated agency is responsible for determining eligibility for Developmental Disabilities Services (DDS). An individual must be eligible for Developmental Disabilities Services to be considered for FFF.[1] The staff member who coordinates the FFF program at the designated agency meets with the family and together with the applicant fills in the information required on the Flexible Family Funding Data Sheet (see Attachment A) and DDS application, if requesting additional services/supports (see exclusions). The original, completed FFF datasheet must be retained by the agency.[2]

If the individual is determined not to have a developmental disability, the family/individual must be informed of the Developmental Disabilities Services appeals

---

1. Eligibility is determined according to the standards set in the *Regulations Implementing the DD Act of 1996.*

2. *Records must be kept as required by Medicaid.*

procedure. This must be done in writing, as well as by a method the family/individual understands, if different than in writing.

*Criteria:*

To receive Flexible Family Funding, a recipient must be:

- A person with a developmental disability who lives with his/her family. For the purposes of the FFF program, family members are defined as unpaid biological, adoptive and/or step-parents, adult siblings, grandparents, aunts/uncles, nieces/nephews and legal guardians. OR
- A family member who lives with and supports a person with a developmental disability.

*Exclusions:*

- Individuals receiving home and community-based waiver supports are not candidates for the Flexible Family Funding program.
- Individuals who are receiving FFF and then move to Medicaid waiver services are no longer eligible for FFF. Anyone who received both waiver and FFF services prior to FY 08 will no longer be able to do so as of July 1, 2008.
- Individuals living independently, or with their spouse, are not candidates for the Flexible Family Funding Program.

RECORD KEEPING

At the time of enrollment into the program, the Division of Disability and Aging Services requires a Flexible Family Funding Data Sheet be maintained at the agency. A family shall not receive a FFF allocation prior to the completion of the required data sheet. It is important that the information contained on the data sheet be as accurate as possible and is *updated* as necessary, but at least annually. Items requiring further explanation are noted below:

- **Description of Disability and/or Diagnosis**—Description of disability applies to young children under first grade; a diagnosis is required for children first grade and older and adults.
- **Gross Annual Household Income**—This includes parental or guardian income, child support payments, and SSI of minor children. For individuals over 18, count only the income of the adult with developmental disabilities. Income for individuals 18 and over includes public monetary benefits (e.g., SSI, Social Security, etc.) and any earned income. "Gross income" means total earnings prior to any deductions or taxes. Income is subject to verification.
- **Number in Family**—Count household members claimed as a dependent by parents or guardian. If the person with developmental disabilities is over 18, the number in the family is one (1). If more than one minor child is eligible, the household income for the family is counted in total, not divided by the number of children.
- **Level of Support Authorized** [3]—Determined by the designated agency,

---

3. It is the responsibility of the Designated Agency to inform the family about the potential tax implications of this funding for workers. It is the responsibility of the family to share information regarding the tax implications of such wages with the worker. If FFF or EFFF is used to pay respite workers, the family must adhere to the State minimum wage rate for hourly respite services.

based on the FFF Sliding Scale (see Attachment B) and funding available. For families with more than one family member with a disability, the scale amount is given for each child.

- **Enhanced Flexible Family Funding (EFFF)**—The only EFFF at this time are those who have been grandfathered as of August 1, 2002. EFFF cannot exceed $3000, and any enhanced dollars must be used for respite. No duplications between home and community based waiver funding and enhanced FFF will be allowed. DA one-time funding may *not* be used to increase an EFFF allocation.

- **Resource Availability**—The designated agency must determine whether the level of FFF authorized is within its budget appropriation. If some resources are present but insufficient to meet the total need, the designated agency may prorate the authorized allocation until resources are available to meet the full allocation. If no resources are available, the family/individual must be placed on the waiting list until resources become available.

Regardless of resource availability, a FFF Data Sheet must be completed for each family requesting service, including those applicants whose income exceeds the sliding scale. This data sheet shall be maintained at the designated agency. This will result in accurate FFF waiting lists if sufficient resources are not available to serve every person requesting Flexible Family Funding or if people do not meet current eligibility for the program.

At times, the availability of one-time funding enables families/ individuals on the waiting list to receive temporary FFF. If this is the case, the family/individual remains on the waiting list until permanent funding is received.

- **Signatures**—The applicant must co-sign with the designated agency's FFF coordinator.

AGENCY REPORTING

The designated agency is required to maintain and/or submit the following reports according to the frequency outlined below:

- **Flexible Family Funding Data Sheet**—this is required for the original allocation of Flexible Family Funding. The Division's FFF liaison will forward a compilation to the designated agency's staff to update and return on an annual basis.

- **Financial/Service Utilization Report**—this is required quarterly within thirty (30) days of the end of the quarter. The report must detail the individuals served by name, date of birth, social security number, Pervasive Developmental Disability status ("yes" or "no"), amount paid to each family broken out by category (respite or goods), and a total administrative charge.

- **Families/Individuals Receiving One–Time Funded FFF**—Individuals receiving FFF through DA one-time funding should be so noted in the one time funding column on the spreadsheet forwarded to the Division. [Note: Families may receive DA one-time funding for use other than as their FFF allocation. These funds are allotted based on one-time funding criteria in the State System of Care Plan and are not tracked on the FFF spreadsheet.]

AGENCY ALLOCATION

- **Annual Allocation**—The Division allocates FFF appropriations annually based on previous year usage and numbers of individuals on waiting lists.
- **Administrative Charge**—The administration charge must be calculated using the designated agency's Department approved administrative rate. The administrative charge is subtracted from the total FFF agency allocation for the amount of FFF paid out to families, not taken from the individual's allocation.

DIVISION OF DISABILITY AND AGING SERVICES

### *FLEXIBLE FAMILY FUNDING DATA SHEET*

Individual's Name: _____

Soc. Security # : _____

Sex: ____

Date of Birth: _____

Telephone: _____

Address: _____

Description of Disability/Diagnosis: _____

_____

Statement of Family Situation (Required Only for Continued Approval of EFFF'):

_____

_____

_____

Would you like information regarding family & /or peer support organizations? ☐ Y ☐ N

Would you like to be put in contact with other families in the area? ☐ Y ☐ N

Children's Personal Care Services: ☐ Y ☐ N

Other services? If yes, please list: ☐ Y ☐ N

_____

Gross Annual Household Income: $_____

Number in Family: _____

We, the undersigned, certify that the above information is true and accurate to the best of our knowledge.

_____

Parent/ Guardian

_____

FFF Coordinator

Date

_____

**FOR DESIGNATED AGENCY USE ONLY**

Amount of FFF Authorized: $...................

**Resource Availability:** ☐ **Allocated** ☐ One-time Funding/Wait List ☐ Wait List

ATTACHMENT B

DIVISION OF DISABILITY AND AGING SERVICES

### *FLEXIBLE FAMILY FUNDING SLIDING SCALE*

*FY 10 Revised Scale*

FAMILY SIZE/GROSS ANNUAL INCOME/MAX. DOLLAR AMOUNT

| % of Maximum Allotment | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| 100 | <25,000 | <30,000 | <35,000 | <40,000 | <45,000 | <50,000 | <55,000 | <60,000 |
|  | $1000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| 90 | <30,000 | <35,000 | <40,000 | <45,000 | <50,000 | <55,000 | <60,000 | < 65,000 |
|  | $900 | $900 | $900 | $900 | $900 | $900 | $900 | $900 |
| 80 | <35,000 | <40,000 | <45,000 | <50,000 | <55,000 | <60,000 | <65,000 | < 70,000 |
|  | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $800 |
| 70 | <40,000 | <45,000 | <50,000 | <55,000 | <60,000 | <65,000 | <70,000 | < 75,000 |
|  | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 |
| 60 | <45,000 | <50,000 | <55,000 | <60,000 | <65,000 | <70,000 | <75,000 | $ 80,000 |
|  | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| 50 | <50,000 | <55,000 | <60,000 | <65,000 | <70,000 | <75,000 | <80,000 | < 85,000 |
|  | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 |
| 0 | >50,000 | >55,000 | >60,000 | >65,000 | >70,000 | >75,000 | >80,000 | >8 5,000 |
|  | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

Note: For children under age 18, income is defined as gross household income including earned income, child support payments and SSI of minor children. Individuals 18 and over should be considered as a single household, regardless of residency with family. Income for individuals 18 and over includes public monetary benefits (e.g., SSI, Social Security, etc.) and any earned income. Income is subject to verification.